IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| AGRIPROCESSORS, INC., | ) | Bankruptcy No. 08-2751 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| JOSEPH E. SARACHEK, in his Capacity as Chapter 7 Trustee, | ) ) ) ) | |
| Plaintiff, | ) | Adversary No. 10-09234 |
| | ) | |
| v. | ) | |
| | ) | |
| LUANA SAVINGS BANK, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER RE: MOTION TO COMPEL DISCOVERY OF DEFENDANT'S EXPERT DRAFT REPORT**

The Court held a hearing in this adversary case on May 29, 2012. Dan Childers represented Plaintiff Joseph E. Sarachek, in his capacity as Chapter 7 Trustee for Debtor, Agriprocessors, Inc. Dale Putnam appeared for Defendant, Luana Savings Bank. Plaintiff filed a Motion to Compel production of a number of documents and reports. During the hearing, the Court ruled on a majority of the discovery disputes. The only unresolved issue was the discoverability of a draft report prepared by Defendant's expert. The Court took the matter under

1

advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), and (O).

## STATEMENT OF THE CASE

In this case, Plaintiff seeks to recover $5,134,582.68 in alleged preferential transfers made by Debtor, Agriprocessors, Inc., to Defendant, Luana Savings Bank. Plaintiff filed a Motion to Compel Discovery asking the Court to order Defendant to produce a draft report and several other documents and reports. Defendant resisted Plaintiff's motion arguing in part that the draft report is not discoverable. The Court held a hearing, and the parties presented evidence in support of their claims. The only claim remaining after the hearing was whether the expert's draft report is discoverable. Because Defendant had earlier in the case voluntarily shared the draft report with Plaintiff, Defendant waived any privilege to the report. The report is subject to Plaintiff's discovery request. Plaintiff's Motion to Compel is granted.

## BACKGROUND

Plaintiff brought this adversary seeking to recover preferential transfers under 11 U.S.C. § 547(b). The original Complaint seeks to avoid $3,702,445.09 in preferential transfers. Plaintiff served the Summons and Complaint on November 10, 2010. Defendant filed an Answer on November 16, 2010.

Plaintiff filed a Motion to Amend and an Amended Complaint on March 3, 2011, claiming that preferential transfers from Debtor to Defendant in fact totaled $5,134,582.68, not $3,702,445.09 as stated in the original Complaint. The Motion was approved. Since that time, the Complaint has been amended a second time and discovery has been extended on account of a variety of factors.

The parties held a settlement conference on September 9, 2011. During the conference Plaintiff claims that Defendant's expert witness, Jolene Topinka, handed her draft report to Plaintiff's counsel. Defendant's counsel observed this disclosure and permitted it. Plaintiff's counsel was allowed to briefly review the draft report and comment on its contents. Plaintiff alleges that Topinka then "forcibly removed the draft report" from Plaintiff's counsel and "stowed it away." (ECF Doc. No. 80, at 1.) Plaintiff later requested production of the draft report. Defense counsel refused.

Plaintiff filed a Motion to Compel on April 20, 2012. The Motion requests, among other things, production of the draft copy of Topinka's report. Defendant does not deny that the draft report was presented to Plaintiff's counsel at the September 9 conference. Plaintiff's counsel has been provided with the final expert report, but not the draft. In resistance to the Motion to Compel, Defendant claims that Topinka's draft report is attorney work product, or alternatively, expert work product and, therefore, not discoverable. (ECF Doc. No. 76.) Plaintiff's

supporting brief argues Defendant waived any right to privilege by revealing the contents of the draft report to Plaintiff's counsel.

The Court held a hearing on the matter on May 29, 2012. Both sides offered exhibits into evidence. The Court accepted the exhibits without objection. After rulings at the hearing on the other discovery disputes, the discoverability of Topinka's draft report is the only matter currently pending before the Court.

### CONCLUSIONS OF LAW

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony. Generally, in order to present expert testimony at trial, an attorney must provide opposing counsel with a written report, from the expert, including "a complete statement of all opinions the witness will express and the basis and reasons for them . . ." as well as "the facts or data considered in forming [the opinions]." Fed. R. Civ. P. 26(a)(2)(B)(i), (ii). Two exceptions may relieve a party of its burden to disclose information under Rule 26(a)(2): (1) attorney-client privilege and (2) the work-product doctrine. See In re Qwest Commc'ns Int'l Inc., 450 F.3d 1179, 1185 (10th Cir. 2006). The Court will address the two exceptions in turn.

Attorney-client privilege only protects information passed in confidence between a client and his attorney. See id. (citing Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)). "The privilege serves the client's need for legal advice, but

4

it also serves the attorney's need to receive complete information in order to give the proper advice." Id. (citing Upjohn Co., 449 U.S. at 390). The Court finds attorney-client privilege does not apply to discovery of the draft report, because producing it would not impair defense counsel's ability to "receive complete information from his client." See id. Defendant's expert is neither the client of defense counsel nor Defendant's employee. Accordingly, attorney-client privilege does not apply here.

The work-product doctrine is applicable. The Supreme Court established the work-product doctrine in the case of Hickman v. Taylor. See Hickman v. Taylor, 329 U.S. 495, 510 (1947). In Hickman, the plaintiff asked for witness statements and memoranda compiled by the defendant's attorney. The Supreme Court denied the plaintiff's claim because he did not show need or justification to receive the information from opposing counsel. Id. at 513-14. "Not even the most liberal discovery theories can justify unwarranted inquiries into the files and mental impressions of an attorney." Id. at 510.

"The work-product doctrine subsequently was incorporated into Federal Rule of Civil Procedure 26(b)(3) . . . ." Qwest, 450 F.3d at 1186. Rule 26(b)(3)(A) states:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's

5

>
> attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
> (i) they are otherwise discoverable under Rule 26(b)(1); and
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
> . . . .

Fed. R. Civ. P. 26(b)(3)(A). Rule 26(b)(4)(B) states: "Rules 26(b)(3)(A) and (B) protect drafts of any report required under Rule 26(a)(2), regardless of the form in which the draft is recorded." Fed. R. Civ. P. 26(b)(4)(B).

"The party asserting the work product privilege bears the burden of providing a factual basis for establishing the applicability of the privilege." Reed v. Cedar Cnty., No. C05-0064, 2006 WL 2246414, at *2 (N.D. Iowa Aug. 4, 2006) (citing St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., 197 F.R.D. 620, 628 (N.D. Iowa 2000)). "Upon meeting this burden, the burden shifts to the party opposing privilege to prove 'substantial need' and 'undue hardship' in order to obtain the materials." Id. "[T]he concept of 'work product' is not confined to information or materials gathered or assembled by a lawyer." Diversified Indus. Inc., v. Meredith, 572 F.2d 596, 603 (8th Cir. 1977). "The work-product doctrine restricts discovery of documents prepared in anticipation of litigation by or for another party or by or for that other party's attorney or agent." Moore v. R.J. Reynolds Tobacco Co., 194 F.R.D. 659, 662 (S.D. Iowa 2000) (citing Petersen v. Douglas Cnty. Bank & Trust Co., 967 F.2d 1186, 1189 (8th Cir. 1992)).

"Work product can be opinion work product . . . or non-opinion work product, i.e., fact work product, which may be discoverable under appropriate circumstances." Qwest, 450 F.3d at 1186 (citing Hickman, 329 U.S. at 511-12). "Ordinary [fact] work product includes raw factual information, and is not discoverable unless the party seeking the information demonstrates a substantial need for the material and an inability to obtain the substantial equivalent of the material by other means." Reed, 2006 WL 2246414, at *2 (citing Gundacker v. Unisys Corp., 151 F.3d 842, 848 (8th Cir. 1998)). "Opinion work product, on the other hand, includes counsel's mental impressions, conclusions, opinions or legal theories." Id.

Plaintiff's motion requires the Court to first decide if Topinka's draft report constitutes opinion work-product or fact/ordinary work-product. The Eighth Circuit has stated "[o]pinion work product . . . enjoys nearly absolute immunity . . . ." In re Green Grand Jury Proceedings, 492 F.3d 976, 980 (8th Cir. 2007). Opinion work-product consists of "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." United States v. Deloitte LLP, 610 F.3d 129, 135 (D.C. Cir. 2010). The Southern District of Iowa has declared "[d]raft versions of expert reports are . . . opinion work product." Moore, 194 F.R.D. at 663 (citing Nexxus Prod. Co. v. CVS New York, Inc., 188 F.R.D. 7, 11 (D. Mass. 1999)).

7

For privilege to apply, the report must have (1) been created in anticipation of pending, specific litigation, and (2) been produced for a specific client. See Moore, 194 F.R.D. at 662. The fact that Topinka's draft report may contain no actual material written or compiled by an attorney is irrelevant. See id. The final report is dated November 4, 2011, thus the draft report appears to have been created in anticipation of the above-captioned litigation—satisfying the first requirement. See id. Plaintiff's Exhibit 12 is a copy of Topinka's final report, and it shows that the report was produced "on behalf of Luana Savings Bank." (Plaintiff's Exh. 12, ECF Doc. Nos. 59-3 at 24, 82.) Logically, the draft report was also likely produced on behalf of Luana Savings Bank. This satisfies the second requirement—that it was produced for a specific client. The Court finds that the draft report meets the two requirements for opinion work product and thus falls under the protection of the doctrine. See Moore, 194 F.R.D. at 662.

When one party successfully establishes opinion work-product, the opposing party may only compel discovery in "rare circumstances" requiring "extraordinary justification." See Gulf Group Gen. Enter. Co. W.L.L. v. United States, 96 Fed. Cl. 64, 68 (Fed. Cl. 2011); see also Office of Thrift Supervision v. Vinson & Elkins, LLP, 168 F.R.D. 445, 446 (D.D.C. 1996). This burden is greater than the "substantial need" and "without undue hardship" afforded to ordinary work-product. See id. The protection of the doctrine, however, may be waived. See In

8

re Wilkerson, 393 B.R. 734, 745 (Bankr. D. Colo. 2007); see also In re Circle K Corp., 199 B.R. 92, 99 (Bankr. S.D.N.Y. 1996).  Plaintiff argues the work product protection was waived in this case.

Both parties cite In re Chrysler Motors Corporation Overnight Evaluation Program Litigation, 860 F.2d 844, 845 (8th Cir. 1988), which addresses expert reports and waiver of work product protection.  Chrysler arose from concurrent criminal and class-action civil litigation against Chrysler.  Id.  Chrysler pled *nolo contendre* to the class action suit and agreed to provide a data compilation about a list of cars affected by Chrysler's fraudulent conduct to opposing counsel on the condition that both sides viewed it as attorney work-product.  Id.  The data compilation was commissioned by Chrysler's counsel in anticipation of the lawsuits, but an outside computer services company compiled the information.  Id.

In the criminal litigation, the government requested that the class-action plaintiff's counsel produce the data.  Id.  Chrysler refused.  The Eighth Circuit upheld the district court's ruling that the data was protected by ordinary/fact work-product privilege.  The court, however, also found Chrysler had waived any work-product protection.  Id. at 846-47.  The court held that Chrysler had "waived any work product protection by voluntarily disclosing the [data] to its adversaries" in the civil litigation.  Id.  (quoting Grumman Aerospace Corp. v. Titanium Metals Corp. of Am., 91 F.R.D. 84, 90 (E.D.N.Y. 1981)); see also Pittman v. Frazer, 129

9

F.3d 983, 989 (8th Cir. 1997). The Eighth Circuit concluded: "Disclosure to an adversary waives the work product protection as to items actually disclosed, even where disclosure occurs in the settlement." Chrysler, 860 F.2d at 847.

Plaintiff's counsel argues that Chrysler is controlling. See id. Defendant argues that Chrysler does not apply to draft reports and that the Rule 26 protection for draft reports cannot be waived. See Fed. R. Civ. P. 26(b)(4)(B). Defendant cites In re Teleglobe Communications Corporation in support of its argument that opinion work product—especially a draft report compiled by its expert witness—is not subject to waiver. 392 B.R. 561, 572 (Bankr. D. Del. 2008); see also Trigon Ins. Co. v. United States, 204 F.R.D. 277, 282 (E.D. Va. 2001); Krisa v. Equitable Life Assurance Soc'y, 196 F.R.D. 254, 256 (M.D. Pa. 2000).

The Court finds that Chrysler is controlling and imposes no such limitation on waiving the work product protection. The Court concludes that Rule 26 work-product protection of expert draft reports can be subject to waiver. See In re Columbia/HCA Healthcare Corp. Billing Practices Litig., 293 F.3d 289, 294 (6th Cir. 2002) ("absent waiver, a party may not obtain the 'opinion' work product of his adversary. . .").

The Court must decide whether Defendant waived the work product protection on the facts of this case. The waiver may be express or implied. See United States v. Fort, 472 F.3d 1106, 1120 (9th Cir. 2007); John Doe Co. v. United

10

States, 350 F.3d 299, 302 (2d Cir. 2003); Eden Isle Marina, Inc. v. United States, 89 Fed. Cl. 480, 503-04 (Fed. Cl. 2009). "With respect to the issue of implied waiver, the Court must not only look at whether [the party] intended to waive the privilege, but also whether the interests [of] fairness and consistency mandate a finding of waiver." Pamida, Inc. v. E. S. Originals, Inc., 281 F.3d 726, 732 (8th Cir. 2002); see also Pittman, 129 F.3d at 989 ("[D]isclosure to an adversary waives work product protection as to items actually disclosed."); BoDeans Cone Co., LLC v. Norse Dairy Sys., LLC, 678 F. Supp. 2d 883, 892 (N.D. Iowa 2009) ("An actual intention that the opposing party see the documents is sufficient but not necessary to effect a waiver of work-product privilege as to those documents.").

According to Pamida, the moving party must demonstrate: (1) that the opposing party intended to waive privilege; and (2) the interests of fairness and justice support a finding of waiver. 281 F.3d at 732. The Court finds that the undisputed facts about what occurred at the September 9, 2011 conference demonstrate an intention to disclose Topinka's draft report. Defendant "produced" Topinka's draft report at the conference. Plaintiff's counsel was given time to "review and comment" on the report before Topinka retrieved it from him. (ECF Doc. No. 59, ¶ 20.) Defendant asserts that Topinka brought the draft report in order to explain it—and Defendant's theories—to Plaintiff at the settlement conference. Defendant does not specifically deny that either defense counsel or

Topinka allowed Plaintiff to "review and comment" on the draft. (ECF Doc. No. 67.) Therefore, Defendant's actions show an intent to waive the privilege under Pamida.

The Court also finds the interests of fairness and justice support a finding of waiver in this instance. Courts have taken a liberal view of the "fairness and justice" standard. See Pamida, 281 F.3d at 732; see also BoDeans, 678 F. Supp. 2d at 892. Courts disfavor the use of work-product protection when it does not advance the goals of the work-product doctrine. See Pamida, 281 F.3d at 732 (finding protection would not survive waiver when the waived information goes to an important element of the case); see also In re Sealed Case, 676 F.2d 793, 818 (D.C. Cir. 1982) ("When a party seeks a greater advantage from its control over work product than the law must provide to maintain a healthy adversary system, the privilege should give way."). Here, the goals of the work-product doctrine are not advanced because Defendant voluntarily revealed the contents in hope—the Court assumes—of potentially reaching a settlement. Defendant's use of Topinka's draft report to explain its theories placed the contents of that report squarely at issue. See Pamida, 281 F.3d at 732. In the interest of fairness to Plaintiff, it would be improper for the Court to allow Defendant to subsequently assert work product protection for information it previously, intentionally disclosed.

The Court concludes Defendant waived its work-product protection by physically disclosing the existence and content of the report to the Plaintiff before attempting to assert any privilege. See BoDeans, 678 F. Supp. 2d at 892. Therefore, Topinka's draft report is subject to discovery. (ECF Doc. No. 59-3, at 24.)

**WHEREFORE**, the Plaintiff's Motion to Compel Defendant's production of expert witness, Jolene Topinka's draft report shown at the September 9, 2011 conference is **GRANTED**. Defendant shall produce the draft report within fourteen (14) days of the date of this order.

Dated and Entered: July 20, 2012

_____
**THAD J. COLLINS**
**CHIEF BANKRUPTCY JUDGE**